# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCIANO ALEXANDRE, et al., *on behalf of themselves, all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., and DOES 1–10,<br><br>Defendants. | Case No. 22-cv-1459-MMA (VET)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 27] |

On September 22, 2023, Plaintiffs[1] Luciano Alexandre, Christine Louise Johnson, and Eric Nelson ("Plaintiffs"), "all acting as sole proprietorship businesses," filed a second amended class action complaint, on behalf of themselves and all others similarly situated, against Defendant Amazon.com ("Defendant" or "Amazon") and Does 1–10. *See* Doc. No. 21 ("SAC") at 2. Pending before the Court is Defendant's motion to dismiss the SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1), or in

---

[1] Plaintiffs state that former Plaintiff Nam Be "has decided to not become an Amazon delivery service provider and therefore [will] not continue as a plaintiff in this case."  SAC ¶ 35.

the alternative, 12(b)(6).  Doc. No. 27.  Plaintiffs filed an opposition, to which Defendant replied.  Doc. Nos. 31–32.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 33.  For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

## I. BACKGROUND

Defendant Amazon.com contracts with "delivery service partners" ("DSPs").  *See* SAC ¶ 41.  Plaintiffs allege that "Amazon discriminates against individual Asians, Whites, and Native Hawaiians or Other Pacific Islanders . . . through a [ ] 'Diversity Grant' program whereby only [ ] Black, Latino, and Native American entrepreneurs . . . who wish to contract with Amazon as delivery service partners . . . are provided $10,000 in additional consideration as part of their contracts with Amazon to be a DSP."  *Id.*  Plaintiffs further allege that Amazon also "prohibits . . . businesses owned by Asians, Whites, and Native Hawaiians or Other Pacific Islanders such as the sole proprietorships businesses of Plaintiffs, from applying for the same types of DSP contracts that Amazon allows only Blacks, Latinos, and Native Americans to enter into with Amazon."  *Id.*  Moreover, as part of the grant application, applicants "are required to select and provide their race from a drop-down box" but "'White,' 'Caucasian,' 'Asian,' 'Asian-American,' 'Native Hawaiian,' [and] 'Pacific Islander,'" are not an option.  *See id.* ¶ 44.

Plaintiffs claim they visited Defendant Amazon's logistics website with the intent to become Amazon DSPs, and that each Plaintiff "has desired and continues to desire to become an Amazon DSP and was previously, and currently is, able and ready to apply."  *Id.* ¶¶ 4, 13, 24.  Plaintiffs also allege that they "satisf[y] each and every requirement to apply for Amazon's DSP program, including work experience, leadership, financial health, community involvement, and geographic preference."  *Id.* ¶¶ 4, 13, 24.

Based on these allegations, Plaintiffs brings three causes of action against Defendant: (1) violation of 42 U.S.C. § 1981; (2) violation of California Civil Code § 51; and (3) violation of California Civil Code § 51.5.  *Id.* ¶¶ 85–109.  Defendant moves to

1  dismiss each cause of action on the grounds that Plaintiffs lack standing under Rule
2  12(b)(1) and fail to state a claim under Rule 12(b)(6).  *See* Doc. No. 27.

## II. REQUESTS FOR JUDICIAL NOTICE

In support of their briefing on this matter, both parties have filed requests for judicial notice.  *See* Doc. Nos. 27-1 at 10 n.1; 31-1.  Neither party objects to each other's requests.

While generally the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint, *see Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003), a court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Court may take judicial notice of "a fact that is not subject to reasonable dispute because . . . it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Venture One Mortg. Corp.*, No. 13-CV-1872 W (JLB), 2016 WL 4768875, at *3 (S.D. Cal. June 10, 2016) (quoting F. R. Evid. 201(b)(2)).  For example, "a court may take judicial notice of matters of public record," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).

  Plaintiffs request judicial notice of various documents related to the legislative history behind California Civil Code § 51.5 and the passage of California Assembly Bill 2553 of 1976. *See* Doc. No. 31-1 at 2–4. Judicial notice of legislative history materials is proper pursuant to Federal Rule of Evidence 201(b). *See Aramark Facility Servs. v. SEIU, Local 1877*, 530 F.3d 817, 826 n.4 (9th Cir. 2008); *Zephyr v. Saxon Mortg. Servs.*, 873 F.Supp.2d 1223, 1226 (E.D. Cal. 2012). In addition, Defendant does not oppose Plaintiffs' request. Accordingly, the Court **GRANTS** Plaintiffs' request for judicial notice.

  As it did in its previous motion to dismiss Plaintiffs' First Amended Complaint, Defendant again asks the Court to take judicial notice of its "Frequently Asked Questions" webpage regarding its DSP program. *See* Doc. No. 27-1 at 10 n.1; *see also* Doc. No. 7-1 ("Ex. A"). This time, Plaintiffs do not object to Defendant's request for judicial notice. "[A]s a general matter, websites and their contents may be proper subjects for judicial notice," provided the party making the request provides the court with the pages of the website. *Caldwell v. Caldwell*, No. C 05-4166 PJH, 2006 WL 618511, at *3–4 (N.D. Cal. Mar. 13, 2006), *order clarified on other grounds*, No. C 05-4166 PJH, 2006 WL 734405 (N.D. Cal. Mar. 20, 2006); *see also Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 966 (C.D. Cal. 2005) (finding several websites, including Amazon.com, to be proper subjects of judicial notice); *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (holding that several district courts have found judicial notice proper over publicly available websites). As it stated previously, the Court finds that Exhibit A is a publicly available webpage, as it existed on March 2, 2023, and its authenticity is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b). Accordingly, the Court again **GRANTS** Defendant's request for judicial notice. However, the Court is still mindful that this webpage may have changed since the time of the events alleged in the SAC. Additionally, while the Court accepts as true that the webpage, as it existed on March 2, 2023, makes certain representations, the Court does not assume the veracity of those representations. *See Woodside Invs., Inc. v.*

*Complete Bus. Sols. Grp., Inc.*, No. 2:20-cv-00042-JAM-CKD, 2020 U.S. Dist. LEXIS 30343, at *4 (E.D. Cal. Feb. 20, 2020).

### III. LEGAL STANDARD

**A.     Rule 12(b)(1)**

A Rule 12(b)(1) motion to dismiss allows for dismissal of an action for lack of subject matter jurisdiction. Subject matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Further, subject matter jurisdiction may be challenged "at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party seeking federal jurisdiction bears the burden to establish jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)). A party may challenge standing in a Rule 12(b)(1) motion given standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A *facial* attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a *factual* attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial challenge to jurisdiction, a court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)). In resolving a factual attack, a court may examine extrinsic evidence "without converting the motion to dismiss into a motion for summary judgment," and a court need not accept the allegations as true. *Safe Air for Everyone*, 373 F.3d at 1039 (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the

District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

However, a Rule 12(b)(1) motion is "not appropriate for determining jurisdiction . . . where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). When there is an entanglement, determination of the jurisdictional issue should be determined "on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077. Unless the summary judgment standard is met, the disputed jurisdictional fact "must be determined at trial by the trier of fact." *Id.*

**B.     Rule 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## IV. D<span>ISCUSSION</span>

Plaintiffs bring three causes of action for violations of the following: (1) 42 U.S.C. § 1981; (2) California Civil Code § 51; and (3) California Civil Code § 51.5. SAC ¶¶ 85–109. Defendant moves to dismiss each claim for lack of Article III standing. *See* Doc. No. 27-1 at 13–19. Alternatively, Defendant moves to dismiss each claim for failure to state a claim upon which relief can be granted. *Id.* at 20–27.

### A. Motion to Dismiss for Lack of Standing

Defendant once again makes a facial and factual attack on the Court's subject matter jurisdiction. *See* Doc. No. 27-1. Specifically, Defendant argues that Plaintiffs merely assert a generalized grievance, not an injury-in-fact, because they are (1) not DSP owners; (2) unwilling to apply to the DSP program; (3) applying for the DSP program

would not be futile; and (4) any potential injury is neither actual nor imminent. *Id.* at 13–19.

Plaintiffs respond that they have pleaded an injury-in-fact in their SAC because they "sufficiently alleged they had the bona fide intent to apply for the DSP program" and because they allege new facts that they are "able and ready to apply" to be DSPs, even though they concede they have not applied to be DSPs because it would be a "futile gesture." Doc. No. 31 at 19–22.  Like in their opposition to Defendant's first motion to dismiss, Plaintiffs again urge the Court that they have suffered an injury-in-fact and thus have standing pursuant to the California Supreme Court's opinion in *White v. Square, Inc.*, 7 Cal. 5th 1019 (2019). *Id.* at 20.

As the Court stated in its previous Order, Doc. No. 20, while it is true that the court in *White* held that "a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business," *White*, 7 Cal. 5th at 1032–33, this does not remove the standing requirements imposed on federal courts by the Constitution. *See Correll v. Amazon.com, Inc.*, No. 3:21-CV-01833 BTM, 2022 WL 5264496, at *3 (S.D. Cal. Oct. 6, 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (reiterating that "an allegation of a 'procedural' statutory violation, 'divorced from any concrete harm,' cannot alone satisfy the injury-in-fact requirement of Article III")).

Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 578 U.S. at 338 (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); and then citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  A plaintiff must have suffered an 'injury in fact'—"'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* The Article III requirement that an injury is "actual or imminent" "ensure[s] that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

The overarching issue of both parties' arguments is whether Plaintiffs' standing to assert their claims can derive from an allegedly discriminatory policy to which they have not yet been subjected. In this case, the Court finds in favor of Amazon.

Because Plaintiffs are unwilling to apply for DSP contracts, which they are by no means guaranteed to receive, their purported injury that they must pay $10,000 more to start a DSP business than Black, Latino, and Native American entrepreneurs is merely hypothetical and conjectural. They are currently not obligated to pay any amount of startup costs because they have not applied to the DSP program, let alone received any contractual offer from Amazon. This kind of alleged injury is insufficient to show standing. *Spokeo, Inc.*, 578 U.S. at 339.

Moreover, Plaintiffs are not in imminent danger of being denied equal treatment in not receiving a $10,000 grant on account of their race. In the Court's view, this alleged danger is not imminent because an unpredictable chain of hypothetical events stands in the way. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact."). It is undisputed that Amazon's multitiered DSP selection process is lengthy, competitive, and highly selective. Therefore, whether Amazon would ultimately accept Plaintiffs into the DSP program, despite their allegations to the contrary, is a far cry from certainty.

To the extent Plaintiffs argue they are suffering from a constitutionally cognizable injury because Amazon's racially discriminatory stipends have deterred them from applying to the DSP program, Doc. No. 31 at 22, this kind of alleged harm does not fit the mold of a concrete injury. Because Plaintiffs have willingly refused to apply to the

DSP program, they have not satisfied the general standing requirement that a plaintiff submit to a policy before bringing an action to challenge it. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–71 (1972) (holding that the plaintiff lacked standing to challenge an organization's discriminatory membership policies because he never applied for membership). Indeed, because their unwillingness to apply results from the ultimate inability to obtain the $10,000 stipend if they become DSP owners, the Court finds that this kind of alleged harm is insufficient to show Article III standing. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").

The Court also agrees with Amazon that Plaintiffs fall outside the class of individuals potentially suffering a direct and personal injury: DSP owners who have been denied any contractual benefit due to their race. *See* Doc. No. 27-1 at 14–15; *see, e.g., Moose Lodge*, 407 U.S. at 166–68 (expressly declining to hold that the "chilling effect" of a discriminatory membership policy could create standing for individuals who never applied for membership). And Plaintiffs' proposed theory that they are suffering a personal injury in fact because Amazon's diversity grant policy has deterred them from applying to the DSP program, *regardless of whether the policy creates a discriminatory barrier of entry in the DSP application process itself*, is not supported by precedent. *See, e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 368 n.52 (1977) ("Resolution of the nonapplicant's claim, however, requires two distinct determinations: that he would have applied but for discrimination and that he would have been discriminatorily rejected had he applied.").

While it is true, that under certain circumstances a plaintiff can establish standing by alleging that applying would be a futile gesture, Plaintiffs have failed to do so here. The rationale conferring standing in such cases derives from the specific condition that unlawful discrimination permeates the application process itself. *See Int'l Bhd. of*

*Teamsters*, 431 U.S. at 365 (holding that Title VII seniority relief can be awarded to nonapplicants who are deterred from applying and are "unwillingly to subject themselves to the humiliation of explicit and certain rejection" because of a discriminatory policy). Here, the Court declines to accept at face value Plaintiffs' allegations to the contrary that Amazon implements unlawful discriminatory practices in the DSP application process or that they cannot apply to the DSP program without subjecting themselves to racial discrimination. Amazon has offered a sworn declaration from its DSP Acquisition Senior Manager in support of its factual attack on subject matter jurisdiction. *See* Doc. No. 27 at 2; Doc. No. 7-1. The declaration indicates that the potential eligibility for diversity grants is not considered during the DSP application process and cannot be used to supplement or replace the requirement that an applicant prove access to $30,000 in liquid assets. Doc. No. 7-1 at 3 ¶ 12. Plaintiffs have not offered any evidence of their own to refute Amazon's evidence. The Court, therefore, disregards Plaintiffs' unsupported allegation that because of their ineligibility for the $10,000 stipend, their applications would be "futile gestures" or less credible than applications submitted by Black, Latino, and Native American applicants. *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (noting the court need not presume the truthfulness of the plaintiff's allegations and may consider evidence outside the complaint); *see also Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039–40 & n. 2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.").

Accordingly, because Plaintiffs have failed to demonstrate that they are suffering from injuries that are concrete, particularized, and actual or imminent, they lack standing to bring their claims. Therefore, the Court **GRANTS** Defendant's motion to dismiss brought under Rule 12(b)(1).

**B.      Motion to Dismiss for Failure to State a Claim**

Even if Plaintiffs could show they have standing to bring their case, the Court finds that they again fail to state a claim.  Defendant challenges all three of Plaintiff's claims.  *See* Doc. No. 27-1 at 20–27.  First, Defendant argues that Plaintiffs have failed to state a Section 1981 claim because "Plaintiffs here plead neither an existing contract Amazon impaired nor a future contract Amazon blocked." *Id.* at 21.  Next, Defendant argues "the Unruh Act does not apply outside the business-to-consumer relationship." *Id.* at 22.  Additionally, Defendant also argues that the Unruh Act is intended to further public policy and only "forbids 'arbitrary, invidious' discrimination," which Defendant contends is not present in this case. *Id.* at 24–27.  In response, Plaintiffs contend that "Amazon has waived any argument to dismiss the SAC's" violation of Civil Code section 51.5 "by conflating Civil Code sections 51 and 51.5[.]"  Doc. No 31 at 2, 10.  As in their opposition to Amazon's motion to dismiss the First Amended Complaint, Plaintiffs again argue that courts have applied the Unruh Act to business-to-business relationships and that public policy does not favor initiatives such as Amazon's DSP Diversity Grant Program. *Id.* at 9 – 11, 25–32.

  1.      *Violation of 42 U.S.C. § 1981*

First, as to Plaintiffs' Section 1981 claim, the Court agrees with Defendants that Plaintiffs do not plausibly allege an actual loss of any contract interest because they allege that they are unwilling to even apply to become DSPs.  Doc. No. 32 at 9.  In addition, Plaintiffs offer no response in opposition.  By failing to address Amazon's arguments, Plaintiffs "effectively abandoned" their Section 1981 claim. *Reichel v. Specialized Loan Servicing*, 2019 WL 1670993, at *3 (S.D. Cal. 2019) (collecting cases).  Therefore, the Court **GRANTS** Amazon's motion to dismiss and **DISMISSES** Plaintiffs' Section 1981 claim **without leave to amend**. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting it is appropriate to deny leave to amend where amendment would be futile).

2.  *Violation of California Civil Code §§ 51, 51.5*

Second, the Unruh Civil Rights Act provides, in relevant part:

> All persons within the jurisdiction of this state are free and equal, and no matter what their ... race ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b). California Civil Code Section 51.5 provides that "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51[.]" Cal. Civ. Code § 51.5(a). The Ninth Circuit has long held that "§ 51.5 [is] a mere extension of the Unruh Act," and that both Section 51 and 51.5 require the "plaintiff to make the same showing." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1126 (9th Cir. 2008) (citing *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859 (9th Cir. 1996). Thus, the Court again finds Plaintiffs' argument that Amazon has waived any argument for dismissing the SAC's violation of Civil Code section 51.5 by conflating the two sections unpersuasive. Moreover, Defendant's motion plainly challenges both causes of action. *See* Doc. No. 27 at 2.

To state a claim for discrimination under the Unruh Act, a plaintiff must allege that: (1) he or she was denied full and equal accommodations, advantages, facilities, privileges, or services; (2) that the substantial motivating reason for defendant's conduct was plaintiff's protected characteristic; (3) that plaintiff was harmed; and (4) that defendant's wrongful conduct was a substantial factor in causing plaintiff's harm. *See* Jud. Council of Cal. Civil Jury Instructions, CACI No. 3060 (Unruh Civil Rights Act—Essential Factual Elements) (2023); *see also* Cal. Civ. Code § 51(b). "In general, a person suffers discrimination under the Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or

practice that prevents him or her from using those services." *White v. Square*, 891 F.3d 1174, 1175–77 (9th Cir. 2018).

Amazon raises a familiar argument that the Unruh Act does not govern business-to-business relationships like the relationship between Defendant and DSPs.  See Doc. No. 27-1 at 22.  In its previous Order, Doc. No. 20, the Court agreed with Amazon.  Amazon now argues that "the case for dismissal is stronger . . . because Plaintiffs now expressly allege that the relationship between Amazon and DSPs is a 'business-to-business relationship.'" *Id*.  In response, Plaintiffs raise their same arguments in opposition as they did previously, except this time, they attach a slew of legislative history in an effort to "explain why the two statutes are distinct"—e.g., why section 51.5 does in fact apply to business-to-business discrimination.  Doc. No. 31 at 9, 15; Doc. No. 31-2.  The Court is unpersuaded.  Binding Ninth Circuit precedent forecloses Plaintiffs' arguments and states that "§51.5, like §51, is aimed only at discrimination in relationships similar to the proprietor/customer relationship." *Johnson*, 534 F.3d at 1126–27 (citing *Strother*, 79 F.3d at 875).  Drawing all reasonable inferences in favor of Plaintiffs, as the Court must do, Plaintiffs again do not plead in their SAC that they are similar to customers of Amazon in any sense.  Accordingly, the Court **GRANTS** Defendant's motion to dismiss both Unruh Act causes of action under Rule 12(b)(6).

Because Plaintiffs have failed to cure the deficiencies outlined in the Court's previous order, the Court finds that allowing leave to amend would be futile.  Failure to correct identified deficiencies "is a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Sathianathan v. Smith Barney, Inc.*, 362 F. App'x 853 (9th Cir. 2010) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987) ("[A] district court's discretion over amendments is especially broad where the court has already given a plaintiff[s] one or more opportunities to amend [their] complaint.")).

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss in its entirety. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: May 23, 2024

HON. MICHAEL M. ANELLO
United States District Judge